## 36841. DEAN v. THE STATE.

GARDNER, P. J. The defendant was convicted under an indictment which charged the unlawful possession of whisky. The defendant's motion for new trial on the general grounds only was denied and the case is before this court for review.

The evidence shows that Virgil Walker, a State Alcoholic Revenue Enforcement officer (along with a deputy sheriff of Telfair County) went to the home of the defendant; that the

defendant was not at home but two other women were there; that the witness and the deputy sheriff found eight or nine pints of bonded whisky; that the house is a "shotgun" type of house containing three bedrooms, a dining-room, kitchen and living-room; that the whisky was found in several of the rooms.

The deputy sheriff testified substantially to the same effect.

Mabel Smith, a witness for the defendant, testified as follows: "I am a sister of the defendant. I am a married woman, and my husband is named James Smith. My husband and I rent living quarters in the home of the defendant and were living in her house on November 10, 1956, when officers Walker and Batchelor came there and searched the house. My husband and I occupy the last bedroom next to the bathroom, and another married sister, Mrs. Ruth Rogers and her husband, Andrew Rogers have living quarters in the home of the defendant and occupy the middle bedroom. Our mother and a younger girl share the first bedroom with the defendant. My sister, Mrs. Rogers and I were at home when the officers came but the defendant, Dollie Dean, was not at home. She arose early that morning and went to McRae, Georgia, to attend to some business and had not returned until after the officers left. My husband and my sister's husband are in the United States Air Force, stationed at Pensacola, Florida. Occasionally they come home on weekends and happened to come in late the night before the house was searched on the following day. They brought some whisky home with them. The defendant, Dollie Dean, was gone to bed when our husbands came in and did not see them. She left early the next morning before we got up and did not know about the whisky being brought there. I thought they put the whisky in a dresser drawer when they first came, but they were up late and must have moved it. My husband and I have exclusive possession of the room we rent and Mrs. Ruth Rogers and her husband have exclusive possession of the room they rent."

The same witness testified on cross-examination: "The house has three bedrooms, a living-room, dining-room, kitchen and bathroom. The bathroom is at the rear end of the hall. The defendant and our mother and a young girl sleep in the first bedroom near the front of the house; my sister, Mrs. Ruth Rogers, her husband, Andrew Rogers, and their child rent and

occupy the middle bedroom; and my husband, James Smith, and I rent and occupy the next bedroom. We all share the use of the hallway, bathroom, living-room, dining-room and kitchen as one big family."

Mrs. Ruth Rogers testified as follows: "I am a sister of the defendant. I am married to Andrew Rogers and we rent and occupy a room in the home of my sister, the defendant Dollie Dean. We have exclusive possession of this room. I was at home on November 10, 1956, when officers came there and searched the house. My husband Andrew Rogers, and my sister's husband James Smith, are in the United States Air Force stationed at Pensacola, Florida, and were serving there in November, 1956. They came home, to the defendant's house, at a late hour of night on November 9, 1956, and brought some whisky with them. I do not know how much, but it was several bottles. The defendant Dollie Dean had gone to bed and she did not see our husbands and did not know they brought the whisky there. She left home early next morning to go to McRae, Georgia, to attend to some business and did not get back home until after the officers left." On cross-examination this same witness testified: "My husband and I, my sister Mrs. Mabel Smith, and her husband, our mother, and the defendant Dollie Dean, all have access to the hallway, the bathroom, living-room, dining-room and kitchen, and use this portion of the house regularly without interference from each other. My sister, Mrs. Mabel Smith, and I regard the defendant as the head of the household. The house was not cut up or made into apartments but was a house with three bedrooms, a living-room, dining-room, kitchen and one bath. We all cooked on the same stove, ate on the same table, used the same bathroom, and drank out of the same bottle. My husband, and my sister's husband have not been subpoenaed as witnesses and are not in court."

The defendant made the following statement: "I am not guilty of the offense with which I am charged. It is true I own the house the officers searched, but I did not know there was any whisky in the house. I was gone from home when the officers came, and had been gone since 7 o'clock—or four and a half hours before they came. I suppose James Smith and Andrew Rogers, the two airmen who rent rooms from me, must have brought the whisky there after I had gone to sleep the night

before. I left early next morning and had not seen them and did not know they brought any whisky there. I did not have any whisky."

The evidence does not show a presumption that the defendant possessed or controlled the whisky because of the ownership of the premises. Where a house is occupied by several tenants, such as here, ownership alone is not sufficient evidence upon which to base a conviction. There are innumerable cases to this effect. The evidence shows that the whisky could have reasonably belonged to other persons who had access to and occupied rooms in which the whisky was found.

*Judgment reversed. Townsend and Carlisle, JJ., concur.*

DECIDED SEPTEMBER 13, 1957.

*A. Russell Ross, Edwin W. Ross, Lovett C. Harrell,* for plaintiff in error.

*J. Wade Johnson, Solicitor-General,* contra.